1890

Carroll W. HORTON and Joyce Jeanette Horton, Respondents v. Mary Elizabeth VAUGHN, John R. Vaughn, John W. Player and Barbara G. Vaughn, Defendants, of whom John R. Vaughn and Barbara G. Vaughn are, Appellants. In re Mindy Maria VAUGHN, a minor under fourteen (14) years old. Appeal of John R. VAUGHN and Barbara G. Vaughn.

(423 S.E. (2d) 543)

Court of Appeals

*Heywood Johnson,* North Charleston, *for appellants.*

*A.F. Carter, III,* Orangeburg, *for respondents.*

Heard Sept. 9, 1992; Decided Nov. 16, 1992.

Reh. Den. Dec. 9, 1992.

LITTLEJOHN, Acting Judge:

This is a termination of parental rights (TPR) case. John R. Vaughn (the Father) appeals the family court's finding that he abandoned his child by willfully failing to visit the child for six months. Barbara Vaughn (the Paternal Grandmother) appeals the court's failure to grant her visitation rights. We reverse in part and affirm in part.

In a TPR case, this Court has jurisdiction to review the entire record to determine the facts in accordance with its view of the evidence. *South Carolina Dept. of Social Servs. v. Forrester,* 282 S.C. 512, 320 S.E. (2d) 39 (Ct. App. 1984). This Court may review the record and make its own findings whether clear and convincing evidence supports termination. *South Carolina Dept. of Social Servs. v. O 'Banner,* 291 S.C. 253, 353 S.E. (2d) 151 (Ct. App. 1987); *South Carolina Dept. of Social Servs. v. Broome,* 413 S.E. (2d) 835, 839 (S.C. 1992).

## Facts

Joyce Jeanette Horton and Carroll Horton are the maternal grandmother and step-grandfather of Mindy Maria Vaughn (born October 10, 1983) (the Child). The Maternal Grandmother's daughter, Mary Elizabeth Vaughn (the Mother), is the natural mother of the Child.

On February 9, 1988, the Maternal Grandparents were awarded sole custody of the Child. The Mother was granted visitation with the Child every weekend. The Father was allowed to exercise his visitation with the Child only by coordinating it with the Mother.

The Mother exercised her visitation regularly at first. The Father visited the Child every time the Mother did so. In the summer of 1988, however, the Mother reduced her visits and the Father contacted the Maternal Grandparents directly about seeing the Child. The Father and the Paternal Grand-

mother visited the Child in August 1988. The Father also visited the Child at the Maternal Grandparents' home on her birthday in October 1988 and in December 1988 for Christmas.

In January 1989, the Maternal Grandparents refused the Mother's request for visitation because of the Mother's unsettled lifestyle. The Mother thereafter did not attempt to visit the Child.

On March 3, 1989, the Maternal Grandparents filed a complaint for TPR against the Mother and the Father. They alleged that the Father failed to visit the Child "except for one or two occasions, [and] has failed to contact the minor child or offer support for the minor child since the last Order of this Court (February 9, 1988). . . ." The Father answered, alleging the Maternal Grandparents prohibited him from visiting and made it difficult for him to visit the Child. The Paternal Grandmother intervened and requested visitation with the Child.

After the action was commenced, the Maternal Grandparents allowed the Paternal Grandmother to visit the Child in August 1989. The Paternal Grandmother took the Child to see the Father despite her assurances to the Maternal Grandparents that she would not do so. The Father also saw the Child in October 1989 for her birthday at the Maternal Grandparents' home. He tried to see the Child for Christmas in December 1989 but the Maternal Grandparents refused.

The family court found that the Father visited the Child regularly in 1988, but, except for a few hours at Christmas 1988 and Christmas 1989, he had not visited the Child since. The court found that neither the Maternal Grandparents nor anyone else prevented the Father from visiting the Child from August 1988 to May 1990. The court found that since the Maternal Grandparents filed their action for TPR in March 1989 the Father made no attempt to move the court for emergency relief and made no other type of motion to visit the Child. The family court concluded that the Father had wilfully failed to visit the Child since August 1988, and the "few incidental visitations" he had with the Child "are given little or no weight." The court found clear and convincing evidence that the Father's parental rights should be terminated and that the Paternal Grandmother's visitation should be denied. The court found clear and convincing evidence that TPR would be

in the best interests of the Child. Accordingly, the court ordered TPR as to the Father and denied the Paternal Grandmother any visitation privilege. The Father and the Paternal Grandmother appeal.

### Termination of the Father's Parental Rights

South Carolina Code Ann. § 20-7-1572 (1976) provides in pertinent part:

> The Family Court may order the termination of parental rights upon a finding of one or more of the following grounds:
>
> \* \* \* \* \* \*
>
> (3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child. The court may attach little or no weight to incidental visitations, but it must be shown that the parent was not prevented from visiting by the party having custody or by court order. The distance of the child's placement from the parent's home must be taken into consideration when determining the ability to visit. . . .

Whether a parent's failure to visit or support a child is "wilful" is a question of intent to be determined by the facts and circumstances of each case. *South Carolina Dept. of Social Servs. v. Broome*, 413 S.E. (2d) 835, 838 (S.C. 1992). The family court is generally given wide discretion in making this determination. *Broome*. The element of wilfulness, however, must be established by clear and convincing evidence. *Id.* Conduct by the parent which evinces a settled purpose to forego parental duties may fairly be characterized as "wilful" because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent. *Id.* Statutes that provide for termination of a natural parent's parental rights must be strictly construed in favor of the parent and the preservation of the parent-child relationship. *Wilson v. Higgins*, 294 S.C. 300, 363 S.E. (2d) 911 (Ct. App. 1987). A finding of a wilful failure to visit will not be predicated upon parental conduct that can be reasonably explained. *Id.*

It is undisputed that the Father visited the Child within six months of the filing of the action. The family court determined, however, that those visits were merely incidental, and accordingly attached little or no weight to those visits. The issue is thus whether the Father's pursuit of visitation in October 1988 for the Child's birthday and December 1988 for Christmas were in fact "incidental" visits. We hold they were not and that the proof simply was not sufficient to warrant the result reached by the family court.

The word "incidental" generally means "depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." *Archambault v. Sprouse*, 218 S.C. 500, 507, 63 S.E. (2d) 459, 462 (1951). As used in a TPR statute, "incidental visitation" means that a parent may not rely upon fortuitous meetings between the parent and a child as a defense to an abandonment claim. *In The Interest of KK*, 162 Wis. (2d) 431, 469 N.W. (2d) 881 (1991).

We hold that, under the facts of this case, the Father's visitations within the six-months period relied upon by the family court were not "incidental visitations" which the family court could discount in finding the necessary basis for terminating the Father's parental rights under § 20-7-1572(3). The Father's failure to visit during the crucial six-months period must be evaluated in the light of the visitation privileges previously awarded him by the court. His visitation privileges were not dependent solely upon his own desires but were limited by the whims of the Mother of the Child with whom he was required to coordinate visitations, and who ultimately displayed a settled purpose on her own behalf to abandon the Child. The Father subsequently contacted the Child's custodians for the main purpose of visiting the Child, and the record does not demonstrate clearly and convincingly that these visits amounted to "fortuitous meetings" with the Child. We think the family court gave less than appropriate consideration to these facts. Accordingly, we reverse the family court's finding that the Father wilfully failed to visit the Child for six months so as to warrant TPR.[1]

---

[1] The Mother's parental rights having been terminated, it would be up to the family court to determine such rights as the Father may or may not have.

## Denial of Paternal Grandmother's Visitation

The Paternal Grandmother argues that the family court erred in denying her visitation privileges. The family court has the power to order periods of visitation for the grandparents of a child. South Carolina Code Ann. § 20-7-420(33) (1976). We have reviewed the record in this case and discern no special circumstances warranting court-ordered visitation rights to the Paternal Grandmother. *Brown v. Earnhardt*, 302 S.C. 374, 396 S.E. (2d) 358 (1990).

Accordingly, we reverse the family court's order insofar as it orders termination of the Father's parental rights for willful abandonment of the Child. We affirm the denial of visitation rights for the Paternal Grandmother.

Reversed in part and affirmed in part.

GARDNER and GOOLSBY, JJ., concur.